Bradley R. TUNNELL, Plaintiff,

v.

James CROSBY et al., Defendants.

Case No. 4:08cv533–RH/WCS.

United States District Court,
N.D. Florida,
Tallahassee Division.

Aug. 24, 2009.

Marie A. Mattox, Marie A. Mattox PA, Tallahassee, FL, for Plaintiff.

Anna H. Upton, Darren Alter Schwartz, Rumberger Kirk & Caldwell PA, Christopher Brian Lunny, Harry O. Thomas, Lisa Caroline Scoles, Radey Thomas Yon etc., Allen C. Winsor, Peter V. Antonacci, Grayrobinson PA, Tallahassee, FL, for Defendants.

## ORDER OF DISMISSAL

ROBERT L. HINKLE, District Judge.

This case arises from the resignation of a state employee. The plaintiff employee asserts he was forced to resign after he refused to interfere with a criminal investigation of another state employee. The plaintiff asserts this violated his First Amendment right not to speak and deprived him of substantive due process. The plaintiff seeks an award of damages under 42 U.S.C. § 1983 against three state officials in their individual capacities. The defendants have moved to dismiss, asserting the plaintiff's constitutional rights were not violated and that in any event the defendants have qualified immunity. I grant the motions to dismiss based on qualified immunity.

### I

The plaintiff Bradley R. Tunnell worked for the Florida Department of Corrections ("DOC"). His boss was the DOC Secretary, defendant James Crosby. The plaintiff's father was Guy Tunnell, the Commissioner of the Florida Department of Law Enforcement ("FDLE"). Mr. Crosby and Guy Tunnell both reported to the Governor, defendant Jeb Bush. The defendant Mark Kaplan was the Governor's chief of staff.

The FDLE began an investigation of another DOC employee, Allen Clark. The plaintiff alleges that Mr. Crosby told the plaintiff to ask his father to back off the investigation of Mr. Clark. The plaintiff refused. The plaintiff alleges that as a result, his resignation was demanded, ostensibly on the basis of conduct that occurred some months earlier. The plaintiff asserts that Mr. Bush, Mr. Kaplan, and Mr. Crosby had a hand in the action. He seeks an award of damages against each individually. The plaintiff has not named an official capacity defendant, and he does not seek reinstatement. All three defendants have left office.

### II

In ruling on the motions to dismiss, the plaintiff's factual allegations of course must be accepted as true. I thus assume the plaintiff was in fact asked to resign because he refused to ask his father to back off a criminal investigation. Even so, the issue here is not whether asking for a resignation on this basis is proper—it plainly is not—but only whether the plaintiff has a § 1983 claim for damages against the individuals who participated in the misconduct.

### III

The First Amendment prohibits a government actor from retaliating against a public employee for exercising his First Amendment rights. *See, e.g., Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539 (11th Cir.1994) (quoting *Morgan v. Ford,* 6 F.3d 750, 753–54 (11th Cir.1993)); *see also Bennett v. Hendrix,* 423 F.3d 1247, 1256 (11th Cir.2005). And the First Amendment protects not just the right to speak, but also the right to refuse to speak. *See, e.g., Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1268 (11th Cir.2004); *Sykes v. McDowell,* 786 F.2d 1098, 1104 (11th Cir.1986). But a public employee's First Amendment rights extend only to speech as a citizen on a matter of public concern; the rights do not encompass, for example, speech that relates only to the employee's job duties or to his personal interests as a public em-

ployee. *See, e.g., Garcetti v. Ceballos,* 547 U.S. 410, 417–20, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Ed.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The First Amendment does not "constitutionalize the employee grievance." *Garcetti,* 547 U.S. at 420, 126 S.Ct. 1951 (quoting *Connick,* 461 U.S. at 154, 103 S.Ct. 1684).

It is far from clear that the First Amendment protected the plaintiff's refusal to ask his father to back off the Clark investigation. The investigation was a matter of public concern, and any attempt to interfere with the investigation, if the attempt became known, would likewise have been a matter of public concern. But the plaintiff was not asked to make a public statement, and he did not do so. He was asked, instead, only to make a private—indeed, secret—statement to his own father. He refused to make the requested private statement.

■ The First Amendment protects even a private statement if it indeed addresses a matter of public concern. *See Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). But the absence of a public statement can be a factor in determining whether an employee was addressing a public concern. *See Kurtz v. Vickrey,* 855 F.2d 723, 729 (11th Cir.1988) ("Kurtz's profession of public concern loses force when it is considered that he took no affirmative steps to remedy, or to inform the public at large about, the problems with which he was so gravely concerned."); *Berry v. Coleman,* 172 Fed.Appx. 929, 932 (11th Cir.2006) (rejecting the plaintiff's First Amendment claim and noting: "the fact that Berry took no affirmative steps to actually communicate [his concern] to the public is also relevant but not fatal to Berry's claim.").

Here, as in *Kurtz,* the plaintiff apparently acted "for personal reasons and not to inform the public of matters of general concern." *Kurtz,* 855 F.2d at 729 (internal quotations and citations omitted). Similarly, in *Berry,* the public employee refused to destroy a memorandum and said doing so would be unethical or illegal, but the Eleventh Circuit said the statement related only to the employee's "personal interest as an employee in not doing anything unethical or illegal" and thus did not address a matter of public concern. *Berry,* 172 Fed.Appx. at 932. The same apparently is true here. *See also Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993) (holding that an employee's speech was not on a matter of public concern when it "focused upon how [her supervisor] behaved toward her and how that conduct affected her work … [but] in no way drew the public at large or its concerns into the picture") (internal quotations omitted); *Brooks v. Univ. of Wisc. Bd. of Regents,* 406 F.3d 476, 480 (7th Cir.2005) (holding that the plaintiff employees' expression of ethical concerns with the operation of clinics did not address a matter of public concern because they "did not so much center on patient welfare as on the internal operations of the clinics").

### IV

■ The plaintiff also asserts a substantive-due-process claim. He says the defendants abused their power. But an abuse of power is not a substantive-due-process violation unless it is so egregious that it shocks the conscience. *See Collins v. Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ("The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions.") (internal quotation marks omitted); *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due pro-

cess' prevents the government from engaging in conduct that 'shocks the conscience.' "); *Carr v. Tatangelo,* 338 F.3d 1259, 1271 (11th Cir.2003) ("Only the most egregious official conduct will be the sort of abusive executive action that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim.") (internal quotation marks and citations omitted); *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003) ("[T]he Fourteenth Amendment must not be used through section 1983 as a 'font of tort law' to convert state tort claims into federal causes of action.").

It is far from clear that the plaintiff's allegations rise to the level of a substantive-due-process violation.

## V

■ A definitive ruling need not be made on whether the plaintiff has sufficiently alleged a First Amendment or substantive-due-process violation. This is so because the motions to dismiss plainly must be granted anyway based on qualified immunity. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *see generally Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus a public officer or employee may be held individually liable only if his conduct violates clearly established law.

■ It was clearly established, when the plaintiff resigned, that forcing a public employee to resign for exercising his First Amendment rights was unlawful. It was clearly established that abusing executive power so egregiously that it shocked the conscience was a substantive-due-process violation. But it was not clearly established that telling an employee to ask his father to back off an investigation implicated the First Amendment or substantive due process. An objectively reasonable public employee would not have known, based on the law at that time or indeed based on the law today, that demanding the plaintiff's resignation would be a First Amendment or substantive-due-process violation. The defendants thus have qualified immunity. *See, e.g., Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that to overcome qualified immunity, the "contours of [a] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Rioux v. City of Atlanta, Georgia,* 520 F.3d 1269, 1282 (11th Cir.2008) (noting that an official has qualified immunity if an objective observer could not predict at the time that his conduct would eventually be held unlawful).

It is true, of course, that there need not be a like case for the law to be clearly established. General principles are sufficient so long as they point to the proper result with unmistakable clarity. Here they do not. To the contrary—and as set forth in sections III and IV of this order—it is far from clear, even today, that the defendants violated the plaintiff's constitutional rights. Instead, in circumstances like these, "other applicable ... mandates of the criminal and civil laws" must be relied upon to "protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions." *Garcetti,* 547 U.S. at 426, 126 S.Ct. 1951.

## VI

For these reasons,

IT IS ORDERED:

The defendants' motions to dismiss (documents 65, 67, and 69) are GRANTED.

The clerk must enter judgment stating, "The plaintiff's claims are dismissed with prejudice." The clerk must close the file.